**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

MARTIN PECORINO,

  Plaintiff,

v.

                              CASE NO.:  **JURY TRIAL DEMANDED**

REGIONS BANK,

  Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARTIN PECORINO (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, REGIONS BANK (hereinafter "Defendant") also know as a "Furnisher", and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2. Today in America there are three major consumer reporting agencies, Equifax Information Services, LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian").

3. Consumer reporting agencies that create consumer reports, like Equifax, Experian, and Trans Union are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply

parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4. When a consumer like Plaintiff disputes information through the agencies, those disputes are transmitted to the party furnishing the information, here Defendant. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION

6. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7. The Plaintiff is a natural person and resident of Marion County in the State of Florida. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Regions Bank is headquartered in the State of Alabama, authorized to conduct business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person who is alleged to owe several debts but does not.

10. In 2019, Plaintiff learned he was the victim of mixed file or identity theft after being notified that an existing Lowe's/Synchrony Bank credit card was being closed due to inaccurate information on his credit reports. Plaintiff shortly after, was also denied a loan to

repair his roof based on the incorrect information reported by Defendant to the credit reporting agencies.

11. On May 20, 2019, Plaintiff's credit reports indicated that there was an account with Defendant that was not his: Regions Bank Credit Card – 409970021487****. The account was showing derogatory late payments, seriously hurting Plaintiff's credit score.

12. On or about July 2019, Plaintiff disputed through Trans Union to the Defendant about the inaccuracy of Defendants' reporting.

13. On August 5, 2019, Defendant verified the account after receiving an ACDV from Trans Union. Defendant verified despite being provided a detailed letter from Plaintiff where Plaintiff included his driver's license with his correct date of birth. The letter also informed Defendant that the address of 2101 Deborah Drive did not belong to him and any account with that address did not belonged to him. Defendant's own records for Plaintiff reflected a date of birth over thirty-three years after Plaintiff's birthday.

14. After the dispute with Trans Union of Defendant's account, Plaintiff focused on retrieving his credit reports from the two remaining CRAs to learn if Defendant was still reporting the fraudulent account.

15. Upon receiving his credit reports, Plaintiff reviewed the information being reported. Plaintiff noticed inaccurate personal information that may belong to his son, Martin A. Pecorino. For example, Plaintiff has been retired for 18 years but the employment data reported his son's employer. There were also addresses listed which belonged to Plaintiff's son, Martin A. Pecorino. Plaintiff believed Defendant was mixing up his son's account with Plaintiff's name. Again, Plaintiff has never had any business relationship with Defendant.

16. On or around February 14, 2020, Plaintiff disputed Defendant's reporting to the CRAs of the inaccurate account to Trans Union, Experian and Equifax.

17. On February 25, 2020, Defendant verified the account that did not belong to Plaintiff as "accurate" through the ACDV from Equifax. Defendant had knowledge of the 2101 Deborah Drive address disputed by Plaintiff as the main address for that account. Defendant also had the wrong date of birth for Plaintiff but it failed to conduct a reasonable investigation. More importantly, Plaintiff had communicated directly with Defendant to indicate the account did not belong to him.

18. On March 9, 2020, Defendant again verified the account not belonging to Plaintiff as "accurate" through the ACDV from Experian.

19. Defendant's response ACDVs to the CRAs showed the account belonged to Martin Pecorino, born July 31, 1966 with an address of 2101 Deborah Dr. The date of birth within Defendant's records was not the same day, month, or even year as Plaintiff but somehow Defendant verified the account information as belonging to Plaintiff. Plaintiff, within his dispute letter, clearly disputed the 2101 Deborah Drive address that Defendant verified as being Plaintiff's prior address. The dispute letters indicate Plaintiff's correct date of birth and address. The dispute letters also included copies of his driver's license with his correct date of birth.

20. On March 12, 2020, Plaintiff was growing desperate as he needed to obtain a loan to repair his roof. Plaintiff sent another dispute to Defendant through the CRAs stating the account does not belong to him.

21. The dispute letter from Plaintiff to the CRAs also included a detailed narration of each inaccurate item within the report. It requested for the CRAs to delete any account involving the address of 2101 Deborah Drive because he had never lived there. He demanded that any

account involving that address in any application was the result of fraud. The dispute again included his social security number; an image of his license; his date of birth and it totaled three full pages discussing Defendant's inaccurate reporting. It clearly explained Defendant was mistakenly reporting Defendant's account to the CRAs.

22. On April 11, 2020, Defendant not only verified to the CRAs that the account was "accurate" but also updated the account reflecting Plaintiff was at least six months late. Plaintiff continued to suffer from the derogatory remarks on his credit by Defendant despite never having an account with Defendant.

23. Again, on or around April 13, 2020, Plaintiff sent yet another dispute letter to have the account with Defendant be investigated. He mailed the dispute to the CRAs.

24. Plaintiff did not receive any correspondence stating the account with Defendant was deleted from his report so again disputed the account with CRAs on May 27, 2020.

25. Plaintiff never allowed anyone to apply with Defendant using his information, apply himself with Defendant, nor did he receive any benefit from Defendant's account.

26. Defendant was aware of the identity theft or mixed file through several communications with Plaintiff. Plaintiff repeatedly called Defendant prior and throughout his disputes through the CRAs. Defendant willfully and recklessly, chose not to believe Plaintiff regarding the fraudulent accounts and continued to verify and report the incorrect information to the CRAs resulting in Plaintiff's credit being severely damaged.

27. Defendant's inaccurate reporting to the CRAs allowed for the CRAs to publish to over twenty different entities inaccurate derogatory information about the Plaintiff about an account that did not belong to him.

28. As a result of the inaccurate reporting, Plaintiff has suffered damages, including, but not limited to:

    i. Closure of an existing credit card;

    ii. Debt reported in his name that does not belong to him;

    iii. Defamation of credit;  Throughout the disputes, Defendant reported derogatory information about Plaintiff being late 60 days or more for an account he never opened.

    iv. Reduced credit availability;

    v. Lowered credit score due to no fault of his own;

    vi. Loss of time;

    vii. Loss of money attempting to correct the inaccurate information;

    viii. Emotional distress;

    ix. Frustration;

    x. Anxiety;

    xi. Humiliation; and

    xii. Mental anguish.

    xiii. Credit denial. Plaintiff has repeatedly attempted to get a loan to fix his roof and the inaccurate reporting to the CRA's continues to prevent him.

29. All conditions precedent to the filing of this action has occurred.

30. These disputed accounts are the result of negligent and/or willful mishandling of the Defendant.

31. Defendant continued to report negative information to the CRA's about Plaintiff involving an account that Plaintiff never opened.

## CAUSES OF ACTION

### COUNT I
### Violations of FCRA § 1681s-2(b)(1)(A) and (B)

32. Plaintiff re-alleges and fully incorporates paragraphs one (1) through thirty-one (31) above as is fully stated herein.

33. On several occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

34. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies. Plaintiff provided enough information to allow Defendant to easily determine this was a fraud case.

35. When Plaintiff mailed his detailed, written disputes and enclosures to the CRAs, they used e-Oscar to transmit those disputes to Defendant via ACDV forms.

36. The ACDV form is the method by which Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. §§ 1681i(a) and 1681s-2(b).

37. Defendant understood the nature of the Plaintiff's dispute when it received the ACDV from Experian, TransUnion and Equifax. Defendant failed to look at the account level information the original creditor and/or Defendant had. At all times, Defendant had the wrong date of birth and address for Plaintiff yet failed to conduct a reasonable investigation when Plaintiff continuously disputed.

38. When Defendant received the ACDV from Experian, TransUnion and Equifax, it as well could have reviewed its own systems and previous communications with the Plaintiff and discovered that Defendant in fact had connected Plaintiff to the account with them that he never

7

opened along with derogatory remarks that should not have made it onto Plaintiff's consumer report. Plaintiff repeatedly communicated with Defendant explaining the account did not belonged to him.

39. Notwithstanding the above, discovery will show Defendant follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Defendant does is review its own internal computer screen with basic data for the account and repeat back to the ACDV system the same information Defendant already had reported to the CRA's. Defendant at all times had possession of the application, identification of the buyer, and additional information that could have easily discovered the fraud.

40. When Defendant receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

41. As a result of Defendant's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

42. The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o. Defendant continued to verify the account despite having the wrong date of birth and the exact disputed address that Plaintiff repeatedly attempted to correct.

43. The law in this District, the Eleventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

44. Defendant was aware of the FCRA decisions by the Eleventh Circuit setting out furnishers' obligations to reasonably investigate disputes when it followed the ACDV procedures used regarding the Plaintiff's dispute.

45. Discovery will confirm that the procedures followed regarding the FCRA dispute through e-Oscar were the procedures that Defendant intended its employees or agents to follow.

46. Because of Defendant's failures in investigating Plaintiff's disputes, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, REGIONS BANK, for statutory damages, punitive damages, actual damages, costs, interest, attorneys' fees, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*
Octavio "Tav" Gomez, Esquire
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
201 North Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 983-2889
Primary Email: TGomez@ForThePeople.com
Secondary: DGagliano@ForThePeople.com
*Attorney for Plaintiff*